UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>PIERRE LIDGE,<br><br>    Defendant. | CRIMINAL NO. 7:23-CR-13-KKC-EBA<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on defendant Pierre Lidge's motion to suppress. (DE 28.) On February 21, 2024, the Court held a hearing on Lidge's motion. (DE 32.) For the following reasons, the Court denied the motion.

**I.   Background**

Prior to Lidge's arrest, Virginia law enforcement had reached out to the Kentucky State Police (KSP) regarding an unidentified black male who was bringing methamphetamine into Virginia from Kentucky. (DE 30 at 1.) Virginia law enforcement had used a known confidential informant (CI) to conduct two controlled buys during the course of their investigation. (*Id.*) KSP was asked to help identify the then-unknown individual, and its analysts determined that he was likely the defendant, Pierre Lidge. KSP's investigation also revealed that Lidge was known to have violent tendencies and might be armed and dangerous. (*Id.* at 2.)

On June 5, 2023, KSP was informed by Virginia law enforcement that the individual would be traveling across state lines to sell roughly three ounces of methamphetamine to their CI. The two state law enforcement agencies collaborated on the third controlled buy, and KSP detectives set up surveillance in Pike County in an attempt to observe the individual traveling back into Kentucky from the controlled buy. (*Id.*) Virginia detectives informed the KSP in real time that the transaction had occurred and that the CI had given the individual marked controlled buy money in exchange for the methamphetamine. (*Id.*) KSP

Detective Cure testified that he observed the individual leave the controlled buy and enter the vehicle that Virginia law enforcement informed was involved in Lidge's drug trafficking operation.

KSP officers followed the suspect's vehicle as he traveled back towards Kentucky. (*Id.* at 2.) When officers observed the vehicle "cross a double solid line on several occasions[,]" they decided to conduct a felony stop in Kentucky. KSP officers employed spike strips and multiple patrol vehicles to block the road, stop the suspect's vehicle, and order him to exit the vehicle. (*Id.*)

KSP officers immediately smelled marijuana coming from the suspect's vehicle. (*Id.* at 2–3.) The suspect, who was then identified as Pierre Lidge, admitted that he had money in his pocket and that he had smoked marijuana in the vehicle earlier. (*Id.* at 3.) The officers then deployed a canine to perform an open-air sniff search, which alerted the officers to the presence of narcotics in the vehicle. (*Id.*) KSP then searched the vehicle and found a plastic bag containing approximately three ounces of methamphetamine, two smaller bags of marijuana, and a handgun. (*Id.*) The money found on Lidge's person was later confirmed to be the controlled buy money provided by Virginia police. (*Id.*)

## II.     Analysis

### A.     Lidge's Arrest

Lidge argues that the police lacked any basis to arrest him and, accordingly, any evidence seized during the subsequent search of his vehicle must be suppressed. "Police may arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996). "The burden of showing probable cause to make a warrantless arrest is on the government." *United States v. Porter*, 701 F.2d 1158, 1165 (6th Cir. 1983). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995) (internal quotations and brackets omitted).

The Court finds that the KSP officers had both reasonable suspicion to stop and probable cause to arrest Lidge for his involvement in drug trafficking. KSP was provided with reliable information from Virginia law enforcement, which had been obtained from a known CI who had participated in two previous controlled buys at a known residence in Virginia. The Virginia police sought assistance from KSP officers, who agreed to conduct surveillance on the third controlled buy and eventually arrest the suspect once he crossed back into Kentucky. While Detective Cure did not personally observe Lidge enter the residence in Pike County, he testified that he watched Lidge leave and enter the vehicle that Virginia law enforcement had informed him was involved in the operation.

Virginia law enforcement provided Detective Cure with significant detail about the investigation and controlled buy—he was told where the controlled buy would take place, when the controlled buy would take place, when the controlled buy was finished, and that the defendant would be driving a gray Chevrolet SUV with Ohio temporary tags and white lettering. Detective Cure and other KSP officers confirmed that the suspect was Pierre Lidge, who was wanted in Ohio and was potentially armed and dangerous. The KSP officers corroborated the information that they were provided by Virginia law enforcement before commencing the felony stop and arrest. Even if Lidge hadn't committed a traffic violation, the KSP had probable cause—and certainly reasonable suspicion—to reasonably believe that Lidge had engaged in the act of trafficking methamphetamine.

During the hearing, Lidge argued that the police lacked probable cause because he did not enter the controlled buy setting with a larger bag of methamphetamine, like he had done in the previous controlled buys. The Court finds this argument unpersuasive. Because the defendant didn't bring the larger bag with him on this third controlled buy does not negate the fact that Virginia law enforcement informed KSP officers in real time that the controlled buy occurred and the CI purchased methamphetamine from the defendant.

B.  **Search of Lidge's Vehicle**

Lidge further argues that the police had no basis to search his vehicle in connection to the suspected drug trafficking. Under the automobile exception to the warrant requirement, "an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id*. (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. In determining whether probable cause exists, the court looks to the objective facts known to the officers at the time of the search. *Id*. at 1075. The automobile exception is based on the automobile's "ready mobility" and the "individual's reduced expectation of privacy in an automobile, owing to its pervasive regulation." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (U.S. 1996).

By the time Lidge had been arrested, KSP officers had probable cause to search his vehicle under the automobile exception to the warrant requirement. The vehicle stopped by the KSP was the same vehicle described by Virginia law enforcement and the same vehicle that Detective Cure observed Lidge enter following the third controlled buy. When Lidge was finally stopped and he exited the vehicle, the police immediately smelled marijuana; in fact, Lidge himself admitted that he had smoked marijuana in vehicle earlier. Despite that admission, the police still deployed a canine to sniff for narcotics. Nothing suggests that the police unreasonably delayed the seizure to perform the sniff search.

Once the canine alerted the police to the presence of narcotics, the officers searched the car and found methamphetamine, marijuana, and handgun in the center console. The KSP officers, considering the totality of the circumstances of the investigation, stop, and subsequent arrest, had ample reason to believe that the vehicle would contain the fruit of Lidge's suspected drug trafficking.

Lidge also argued that a discrepancy between the violation time and arrest time could indicate that the search was unreasonable in its execution. The relevant police citation in this matter listed the violation time as 4:32 p.m. and the arrest time as 6:44 p.m. Detective Cure, however, testified that the

time between the felony stop, the sniff search, and the discovery of the drugs was between 10 and 25 minutes. He further testified that the 6:44 p.m. time could have been the time that the police and Lidge arrived at the jail. Regardless, the Court finds that the seizure and search were reasonable. The stop took place in a rural area and Detective Cure testified that they had to wait for a wrecker to transport Lidge's vehicle away from the scene. No evidence suggests that the police delayed the arrest and search beyond what was reasonable under the circumstances.

### III.     Conclusion

For the aforementioned reasons, the Court hereby ORDERS as follows:

1)      Lidge's motion to suppress (DE 28) is DENIED; and

2)      this matter is set for a Jury Trial in Pikeville, Kentucky, on **May 20, 2024** at 9:00 a.m., counsel and parties are to be present at 8:30 a.m. The estimated length of trial is three days.

This 29th day of February, 2024.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY