UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, v. PIERRE LIDGE, Defendant/Movant. | ) | No. 7:23-CR-13-KKC-HAI RECOMMENDED DISPOSITION |

*** *** *** ***

The Court considers federal prisoner Pierre Lidge's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. D.E. 57. On September 9, 2025, the Clerk of Court received Lidge's § 2255 motion. *Id*. The government responded in opposition on January 14, 2026. D.E. 65. Along with its response, the government filed affidavits from the two attorneys who represented Lidge during his proceedings, Patrick O'Neill and Noah Friend. D.E. 65-1; D.E. 65-2. No reply was received.[1] Accordingly, the motion is ripe for adjudication.

The Court recognizes that Lidge is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83

[1] Notably, two pieces of mail sent to Lidge at FCI Hazelton were returned to the Lexington Clerk's Office as undeliverable. D.E. 68; D.E. 69. According to the Bureau of Prison's inmate locator system, Lidge was transferred at FCI Loretto. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited July 20, 2026). Although it appears that he did receive the government's response, Lidge has not attempted to update his address or otherwise filed anything in this case since initially filing his petition in September of 2025. It appears Lidge may have abandoned his motion. Regardless, despite his lack of a reply, Lidge may pursue appropriate objections to this Recommended Disposition. *See Shelton v. United States*, 800 F.3d 292, 295 (6th Cir. 2015) (holding a petitioner's opportunity to object to a magistrate judge's recommendation satisfies the notice and hearing requirement).

(2003). Even so, for the reasons described below, the undersigned recommends that Lidge's § 2255 motion be denied.

## I. Background

On May 15, 2024, Lidge pled guilty to one count of possession with the intent to distribute 50 grams or more of a mixture containing methamphetamine under 21 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). D.E. 40. In his plea agreement, Lidge waived the right to appeal his guilty plea and conviction. D.E. 41 at 4. He also waived his right to collaterally attack the guilty plea, conviction, and sentence aside from claims of ineffective assistance of counsel. *Id.* By judgment entered September 9, 2024, Lidge was sentenced to ten years of incarceration. D.E. 51. Lidge did not appeal.

In his § 2255 motion, Lidge asserts four grounds for relief, arguing that he received ineffective assistance of counsel when:

1. Counsel failed to investigate the Department of Justice's ("DOJ") December 16, 2022, policy memoranda concerning the application of mandatory minimums in drug prosecutions. D.E. 57 at 4-10.

2. Counsel failed to object when the Court did not properly address the essential elements of the charges during his rearraignment. *Id.* at 11, 13-14.

3. Counsel failed to seek dismissal of the defective indictment. *Id.* at 15-20.

4. Counsel failed to consult with Lidge regarding his rights to an appeal. *Id.* at 21, 23-24.

At the outset of the case, Hon. Patrick O'Neill was appointed to represent Lidge under the Criminal Justice Act. D.E. 7. O'Neill filed a motion to withdraw as counsel, which was granted after a hearing. D.E. 22; D.E. 24. Subsequently, Hon. Noah Friend was appointed and represented Lidge for the remainder of his proceedings. *Id.* Lidge's petition does not explicitly

identify which of his grounds apply to which attorney, but regardless of the intent his grounds are meritless.

## II. Legal Standards

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

An ineffective-assistance-of-counsel ("IAC") claim presents a mixed question of law and fact. *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003). To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id*. at 695.

*Strickland* asks whether it is reasonably likely the result would have been different. This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable. *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quotation marks and citations omitted). To show ineffective counsel at sentencing, the petitioner must prove his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007).

## III. Analysis

### A. Failure to Investigate DOJ Policy Change

First, Lidge argues that his attorney was ineffective for failing to investigate and consider a DOJ policy change issued by Attorney General Merrick Garland in December of 2022. The DOJ issued two policy memoranda on December 16, 2022. One discussed general department policy for charging, pleas, and sentencing. The other discussed specific policies for charging, pleas, and sentencing in drug cases. The general memorandum stated "charges that subject a defendant to a mandatory minimum sentence should ordinarily be reserved for instances in which the remaining charges ... would not sufficiently reflect the seriousness of the defendant's criminal conduct, danger to the community, harm to victims" and "such purposes of the criminal law as punishment, protection of the public, specific and general deterrence, and rehabilitation." U.S. DEP'T OF JUST., GEN. DEP'T POL'Y REGARDING CHARGING, PLEAS, AND SENT'G (Dec. 12, 2022) at 2, 3. The drug-specific policy addressed when a prosecutor should, and should not, choose to charge an offense carrying a mandatory minimum sentence. U.S. DEP'T OF JUST., ADDITIONAL DEP'T POL'Y REGARDING CHARGING, PLEAS, AND SENT'G IN DRUG CASES (Dec. 12, 2022).

Lidge argues that his Indictment should not have included a charge for a drug-based crime with a mandatory minimum sentence. By failing to investigate and object to the "selective enforcement" of the policy, Lidge argues, his attorney performed deficiently. D.E. 57 at 9. This claim is meritless. First, in his affidavit, Friend attests he was familiar with the memorandum and did not believe that it applied to Lidge's case, and therefore did not raise it before the Court. D.E. 65-2 at 1. Lidge's counsel, therefore, did consider the DOJ policy change.

Further, the memo explicitly states that the policies "are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." ADDITIONAL DEP'T POL'Y at 5. Such a memorandum is "a guidepost for Department of Justice prosecutors" and "does not address the validity" of any specific application of mandatory minimum sentences. *United States v. Nagy*, 760 F.3d 485, 490 (6th Cir. 2014); *see also United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (holding that internal agency policy did "not raise any constitutional questions" when the agency was not constitutionally required to adopt the regulations).

Moreover, Lidge has failed to establish that the government violated the policy by charging Lidge with an offense carrying a mandatory minimum in his case. The memorandum and its additional department policies advise prosecutors that they should decline to charge a drug quantity with a mandatory minimum if:

- The defendant's relevant conduct does not involve: the use of violence, the direction to another to use violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person;
- The defendant does not have a significant managerial role in the trafficking of significant quantities of drugs;
- The defendant does not have significant ties to a large-scale criminal organization or cartel, or to a violent gang; and
- The defendant does not have a significant history of criminal activity that involved the use or threat of violence, personal involvement on multiple occasions in the distribution of significant quantities of illegal drugs, or possession of illegal firearms.

ADDITIONAL DEP'T POL'Y at 2. Here, the record shows at least two of the criteria are unsatisfied. Lidge pleaded guilty to possessing a firearm in furtherance of the underlying drug trafficking offense. Further, his Pre-Sentence Report reflects a ten-year period of criminal activity preceding the instant criminal case, which included multiple controlled-substance convictions and the frequent misuse of firearms. As the government contends, "[w]hen some, but not all,

criteria outlined in the policy are met, as was the case here, the Garland memo allowed for prosecutors to utilize their discretion whether to present the charge to the Grand Jury. Lidge's attorneys would not have prevailed on a challenge based on this DOJ policy, as Lidge's conduct fell squarely within the policy's charging guidelines." D.E. 65 at 5.

Therefore, as Lidge has failed to establish that his counsel was deficient for not raising the issue of the Garland memos or that he was prejudiced by his counsel's lack of action, Lidge is not entitled to relief on this ground.

**B. Failure to Object Regarding Essential Elements**

Next, Lidge argues that his attorney was ineffective because he failed to object when the Court did not explain the "essential elements" of his charges in violation of Federal Rule of Criminal Procedure 11(b)(1)(G). D.E. 57 at 11, 13-14.

Federal Rule of Criminal Procedure 11 governs plea colloquies. The Rule is meant to ensure that the district court is satisfied that a guilty plea is made knowingly, voluntarily, and intelligently. *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id*. at 378-79. When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004).

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(G), prior to accepting a guilty plea, the court must address the defendant while under oath to inform the defendant of, and determine that he understands, "the nature of each charge to which the defendant is pleading." This includes an understanding of each essential element of the crime. *See Bousley v. U.S.*, 523 U.S. 614, 618-19 (1998). It does not, contrary to Lidge's assertions, require the Court to explain in detail the essential elements of all counts. *Pettway v. United States*, No. 20-1997, 2021 WL 5288990, at *2 (6th Cir. 2021) (finding petitioner's counsel was not ineffective when the district court did not describe the essential elements during the guilty plea hearing as it had adequately ensured petitioner understood the elements) ("At the plea hearing, the government recited the substance of the plea agreement, noting that it set out the elements of the charged offenses and the factual basis for the plea. And the district court confirmed that Pettway had reviewed the plea agreement with his attorney and understood it. On this record, there was no basis to object that the district court had not adequately informed Pettway of the elements of count 5."); *see also United States v. Williams*, 941 F.3d 234, 237 (6th Cir. 2019) (holding that, although the district court did not itself identify the essential elements of his claim, the fact that the prosecutor had done so and they were expressed in the plea agreement was sufficient to satisfy Rule 11(b)).

The essential elements of both counts of the Indictment are described in ¶ 2 of Lidge's plea agreement. D.E. 41 at 1-2. Paragraph 14 of Lidge's plea agreement states that Lidge understood the plea agreement and that his lawyer had fully explained it to him. D.E. 41 at 5. At Lidge's rearraignment, the Court and the government identified both charges. The government specifically noted where the plea agreement set forth the essential elements. D.E. 60 at 8-9. Lidge swore that he understood the agreement, his lawyer had fully explained it to him, and that he had entered into it voluntarily. *Id.* at 14. In the affidavit filed alongside the government's

response to Lidge's § 2255 motion, Friend attested that he reviewed the elements of the offenses with Lidge before the hearing and did not recall a Rule 11 violation occurring. D.E. 65-2 at 1.

Lidge swore under oath at rearraignment that he understood the essential elements of the offenses to which he pleaded guilty, as contained in his plea agreement. D.E. 60 at 11, 14-15. The Court confirmed his understanding through a proper Rule 11 colloquy. Accordingly, because there was no error, Lidge's attorney could not have raised a meritorious objection and did not perform deficiently.

Notwithstanding compliance with Rule 11, Lidge does not establish that he would have pleaded guilty if his attorney had objected to the Court's purported failures. Lidge claims that he was prejudiced as his guilty plea "was entered unknowingly and unintelligently" and that there is a "reasonable probability that he would not have plead guilty, however, insisted on going to Jury Trial. . .". D.E. 57 at 14. Aside from this broad claim that he would have wanted to go to trial, Lidge does not explain how his plea was involuntary. He does not explain how he misunderstood the elements, or how a different understanding of the essential elements would have resulted in his desire to proceed to trial. *See United States v. Wilford*, 2026 WL 1093621 (6th Cir. 2026) (affirming the denial of petitioner's § 2255 motion because the district court's incorrect description of the essential elements during her guilty plea hearing did not affect her knowing and voluntary decision to sign the plea agreement"). Accordingly, Lidge has not established entitlement to relief on this ground.

### C. Failure to Move to Dismiss Indictment

Next, Lidge argues that his counsel was ineffective for failing to object to his "fatally defective indictment." D.E. 57 at 16. Although he does not identify which attorney provided ineffective assistance, he argues that his attorney failed to conduct sufficient research and review

of the indictment, failed to file a pre-trial motion to dismiss, and erroneously advised him to plead guilty to a defective indictment. He claims that Count 1 of the indictment failed to include all statutory language and omitted the relevant statutory penalty provision establishing the mandatory minimum sentence. *Id.* at 17-18. He claims that Count 2 improperly omitted the specifics of the firearm used and the exact subsection of the charging statute. *Id.* at 18-20.

An indictment is sufficient if "it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *United States v. Rankin*, 929 F.3d 399, 404-05 (6th Cir. 2019) (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005)). When evaluating whether an indictment sufficiently informs a defendant of an offense, the court applies "a common sense construction." *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000). "[D]ue process does not require a recitation of the statute; it requires only that the [indictment] as a whole set forth the critical details of the offense charged." *United States v. Edington*, 526 Fed. App'x 584 (6th Cir. 2013) (quoting *United States v. Lentsch,* 369 F.3d 948, 953 (6th Cir.2004)). When a challenge to an indictment is brought for the first time after conviction, it is "construed liberally in favor of its sufficiency." *United States v. Gibson*, 409 F.3d 325, 331 (6th Cir. 2005) (citing *United States v. Gibson*, 513 F.2d 978, 979 (6th Cir. 1975)).

Count One of the Indictment in this case alleged that, on or about June 5, 2023, Lidge "did knowingly and intentionally possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841." D.E. 8 at 1. Lidge argues first that this was defective as it failed to include the additional language "its salts, isomers, and salts of its isomers," that is contained in 21 U.S.C. § 841(b)(1)(A)(viii). D.E. 57 at 17-18. Because Lidge

was not charged with or convicted of activity related to methamphetamine's salts, isomers, or salts of its isomers, the Indictment sufficiently listed the elements of the offense that were relevant to Lidge and gave Lidge notice of the charge. He next argues the language is insufficient because it omitted citation to the specific subsection of the statute, which establishes the mandatory minimum sentence. *Id.* at 18. However, Lidge does not point to any authority requiring such a citation. Even if this were a requirement, the penalties for both counts were listed at the end of the Indictment. *See* D.E. 8 at 4. As such, the Indictment provided Lidge with ample notice of the penalties, which were reviewed at Lidge's arraignment. D.E. 15.

Count Two of the Indictment alleged that Lidge "did knowingly possess a firearm in furtherance of a drug trafficking offense for which he may be prosecuted in a Court of the United States, as set forth in Count 1, that is, possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), all in violation of 18 U.S.C. § 924(c)(1)(A)." D.E. 8 at 1-2. Similar to his contentions on Count 1, Lidge argues that this was insufficient as it (1) "omits the make, model, and serial number of the firearm" and (2) "omits the exact subsection of 18 U.S.C. 924(c)(1)(A)(i)," which notes a mandatory minimum sentence. D.E. 57 at 18-19.

Again, Lidge fails to establish that the government was required to include the specifics of the firearm in the Indictment to provide him with sufficient notice of the charge. His argument is totally lacking in any legal support. Plus, the make, model, and serial number were listed in the Indictment's forfeiture allegation. D.E. 8 at 2. Concerning the mandatory minimum, again there is no requirement that this be included in the Indictment and it was listed in the penalties page accompanying the Indictment.

Because Lidge has failed to identify any actual deficiencies in the Indictment, his argument that it was fatally defective and that counsel performed deficiently by failing to object is meritless. Additionally, he has also failed to establish prejudice. Lidge again argues that, but for this error, he would not have pleaded guilty and would have proceeded to trial. D.E. 57 at 19. However, he provides no specificity for this claim. He does not claim that he could not understand the Indictment or otherwise identify how the changes outlined above would have resulted in a different outcome.

### D. Failure to Consult about Appeal

Finally, Lidge argues that his second attorney failed to consult with him about his right to appeal, and, if he had, Lidge would have instructed his lawyer to file a notice of appeal.

The law is "clear that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In such cases, prejudice is presumed, "regardless of whether the appeal would have been successful or not." *Ludwig*, 162 F.3d at 459.

The Sixth Circuit has summarized the appropriate analysis, as outlined by the Supreme Court in *Flores-Ortega*:

> First, we must determine whether the defendant gave counsel express instructions regarding an appeal. Second, if we find that the defendant did not provide express instructions, then we must determine whether counsel consulted with the defendant about an appeal. Finally, if there was no consultation, then we must decide whether the failure to consult was objectively unreasonable.

*Johnson v. United States*, 364 F. App'x 972, 975–76 (6th Cir. 2010) (discussing *Flores-Ortega*, 528 U.S. 470, 478-86 (2000)). As to the second step of the analysis, the Supreme Court has defined "consultation" as "advising the defendant about the advantages and disadvantages of

taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.

If counsel fails to consult with his client, the Court must determine whether the failure to consult was unreasonable by determining whether "(1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Johnson*, 364 F. App'x at 975 (quoting *Flores-Ortega*, 528 U.S. at 480). In making this determination, the Court "must consider all the information counsel knew or should have known." *Id*. (quoting *Flores-Ortega*, 528 U.S. at 480). Factors for consideration include "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. The Court must also consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id*.

To show prejudice, a defendant must prove that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. "The question is whether [the defendant] 'would have' appealed, not whether 'his hypothetical appeal might have had merit.'" *Johnson*, 364 F. App'x at 977 (quoting *Flores-Ortega*, 528 U.S. at 486). The remedy for this type of *Strickland* violation is a delayed appeal. *Campbell*, 686 F.3d at 360.

Here, neither party argues that Lidge explicitly requested a notice of appeal. As such, the Court only considers (1) whether counsel consulted with Lidge about his appellate rights and, (2) if not, whether the failure was objectively unreasonable.

The record suggests that Lidge's lawyer did consult with him about his appellate rights. In his affidavit, Friend states that "[a]fter sentencing, [Friend] reminded the Defendant that he had fourteen days in which to file an appeal if he chose to do so. The undersigned does recall telling him that it was unlikely an appeal would do anything, as he received the mandatory minimum on his sentence." D.E. 65-2 at 2. Further, the Court questioned Lidge about the sections of the plea agreement concerning his appellate rights. D.E. 60 at 12-13. Lidge then agreed under oath that his lawyer had fully explained the entire plea agreement to him, and that he entered it voluntarily. *Id.* at 14.

Even if Friend did fail to consult, the failure was not objectively unreasonable. Lidge has not established that a rational defendant in his position would want to appeal or that he reasonably demonstrated an interest in appealing. The conviction followed a guilty plea. Lidge's plea agreement waived his rights to appeal all but his sentence. His sentence was well within his Guidelines range and the plea agreement's recommended sentence. Lidge had a Guidelines-range sentence of 60-71 months for Count 1 and a sentence of 60 consecutive months for Count 2. Lidge's sentence of 120 months was the lowest sentence he could receive. Given this context, it is reasonable for an attorney to believe a person in Lidge's position would not be interested in appealing.

Second, Lidge has not established that he specifically was interested in appealing. In addition to the above-mentioned factors, Lidge's behavior before and after sentencing demonstrated a lack of interest in appealing. According to his own brief, after sentencing, Lidge "expressed disappointment in the lengthy federal sentence he received to his ex-lawyer and stated 'what's next.'" D.E. 57 at 23-24. Lidge does not address how his ex-lawyer purportedly responded to this question or indicate he asked more specifically about his appellate rights.

Meanwhile, the Court reviewed his rights to appeal and the process for appealing with Lidge during his rearraignment, so he was certainly familiar with his rights and the applicable language. D.E. 40. Even considering the version of facts exactly as Lidge presents them, Lidge has failed to establish that his attorney unreasonably failed to consult with him. In his affidavit, Friend further explains his belief that Lidge was not interested in appealing. Friend states that Lidge expressed to him multiple times that he "wanted a sentence of no more than 120 months. . . .". D.E 65-2 at 2. Friend secured a plea agreement in which the government agreed not to recommend a higher sentence, and Lidge was sentenced to the mandatory minimums applicable to the counts of conviction. Lidge has not identified any reason that Friend should have expected that he was interested in an appeal. Accordingly, even if Friend did not consult about Lidge's right to appeal, he was not ineffective.

## IV. Conclusion

For the reasons explained above, the undersigned recommends that Lidge's § 2255 motion (D.E. 57) be **DENIED**.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). No reasonable jurist would debate that Lidge has failed to establish either of his attorneys failed to investigate the applicability of DOJ policy

on mandatory minimums, object to the Court's plea colloquy, move to dismiss the Indictment, or consult on his rights to an appeal. As such, no Certificate of Appealability is warranted.

Finally, the parties are notified that any objection to, or argument against, denial of this motion must be asserted properly and in response to this Report and Recommendation. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 23rd day of July, 2026.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge